UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80765-CIV-DIMITROULEAS

U.S. COMMODITY FUTURES TRADING
COMMISSION,

       Plaintiff,

vs.

LASALLE INTERNATIONAL CLEARING
CORPORATION, STERLING
WENTWORTH CURRENCY GROUP,
INC., and MICHAEL RIOLO,

       Defendants.
_____/

## ORDER FOR ENTRY OF JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS

On May 21, 2009, the Commodity Futures Trading Commission ("Commission") filed a Complaint against Lasalle International Clearing Corporation ("Lasalle"), Sterling Wentworth Currency Group, Inc. ("Sterling") and Michael Riolo ("Riolo") (collectively called the "Defendants"). Defendants were charged with fraudulently soliciting and receiving funds from customers for the purpose of trading off-exchange foreign currency contracts ("forex") which were forex futures contracts. Defendants were further charged with making and delivering to customers monthly statements which failed to disclose that Defendants lacked sufficient cash to pay to customers the purported value of their accounts and also overstated the total cash available in these monthly statements by millions of dollars. By this conduct, Defendants were charged with violating Sections 4b(a)(2)(A), (B) and (C) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 *et seq.* (2006), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§

13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 6b(a)(2)(A), (B) and (C). Riolo was further charged with violating Section 4b of the Act, as amended by the CRA, as a controlling person of Lasalle and Sterling, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006). In addition, Lasalle and Sterling were charged with Riolo's violation of Section 4b of the Act, as amended by the CRA, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2001), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2002).

On May 22, 2009, copies of the Summons and Complaint were properly served upon Defendants pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and proof of such service was filed with the Court on June 5, 2009. Accordingly, Defendants were required to file an Answer and failed to do so within the time permitted by Rule 12(a)(1) of the Fed. R. Civ. P.

On July 21, 2009, the Commission served Defendants and filed with the Clerk of the Court proposed Certificates of Default ("Certificates of Default") along with Motions to Enter the Certificates and Declarations in support of the Certificates. On July 22, 2009, the Clerk of the Court issued Certificates of Defaults as to each Defendant for failing to appear, answer the Complaint or otherwise plead to the Complaint within the time required by law.

The Commission has now submitted its Application for Entry of Judgment by Default with partial relief including a permanent injunction, civil monetary penalty and other equitable relief against Defendants (the "Application") pursuant to Fed. R. Civ. P. 55(b)(2). The Court has considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Application, and other written submissions of the Commission filed with the Court, and being fully advised, hereby:

**GRANTS** the Commission's Application and enters findings of fact and conclusions of law finding Defendants liable as to all violations alleged against them in the Complaint. The Court further grants the Commission's request for injunctive relief, a civil monetary penalty and other equitable relief. Accordingly, the Court now issues the following Order for Judgment by Default, Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendants (the "Order").

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

This Court has jurisdiction over the subject matter of this action and Defendants pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1, in that Defendants transacted business in this district, and the acts and practices in violation of the Act and Regulations occurred within this district, among other places.

### B. Findings of Fact

LaSalle is a Florida corporation formed in April 1999, which listed its principal place of business at 11555 Heron Bay Boulevard, Coral Springs, Florida. LaSalle has never been registered with the Commission. Sterling is a Florida corporation formed in April 1999, which listed its principal place of business at 11555 Heron Bay Boulevard, Suite 200, Coral Springs, Florida 33073. Sterling has never been registered with the Commission. Michael Riolo resides

in Boca Raton, Florida, and is the sole listed officer of both LaSalle and Sterling. Riolo has never been registered with the Commission.

From at least June 18, 2008 to the present, Sterling, through its principal and control person, Riolo, solicited customers to invest funds to engage in forex transactions. Riolo is the sole officer of both LaSalle and Sterling. Customers were directed by Riolo to open up an account at Sterling and Lasalle was responsible for executing and clearing forex transactions made for or on behalf of the Sterling customers.

Generally, Defendants directed customers to deposit their funds into an account in the name of Lasalle at Washington Mutual Bank ("WAMU") in order to open a trading account. Both Lasalle and Sterling maintained accounts at WAMU and Riolo was the sole signatory on each of these accounts.

All customer accounts opened at Sterling were for speculative purposes and managed by Defendants. Defendants had complete discretion to control how many contracts should be purchased or sold for customers, when the contracts should be purchased or sold and the price the customers were obligated to pay and/or receive for the purchase and/or sale of the forex contracts. In addition to having complete discretion over the forex trading conducted on behalf of their customers, Defendants also were the counterparties in each of these forex transactions, i.e., they were acting as a principal in both buying from and selling forex to their customers. As a counterparty in each of these transactions, for every round-turn transaction in which a customer received a profit, Defendants lost funds in an amount equal to the net trading profits gained by the customer.

Defendants also prepared or caused to be prepared monthly statements that were delivered to customers during the relevant period. The monthly statements included the value of the customer's account at month-end.

Defendants accepted funds from customers during the relevant period and knowingly failed to disclose to them the following: 1) Defendants were going to be and in fact were the counterparties in each forex transaction entered on behalf of their customers; and 2) Defendants owed millions of dollars to customers and they lacked the funds necessary to make these payments as well as any future payments for prospective profits.

Defendants also knowingly failed to disclose to customers that they lacked sufficient funds to pay to customers the purported month-end value of their accounts as reflected on the monthly statements delivered to customers. In addition, Defendants expressly overstated the total cash available in these monthly statements.

For example, during the relevant period, Defendants prepared and sent monthly statements to at least 25 customers representing that by November 30, 2008, all forex positions were closed. Each account statement also represented the total cash available in each individual customer's account. In sum, for these 25 customers, the cash in their accounts totaled over $26 million. However, by November 30, 3008, Sterling Wentworth and Lasalle had only $1,506,521.67 in their WAMU accounts. Accordingly, Defendants knowingly failed to disclose the lack of cash available to pay customers their account balances and prepared and delivered to customers false account statements that expressly overstated the total cash in those 25 accounts by approximately $24.5 million.

Defendants were not financial institutions, registered broker dealers, insurance companies, bank holding companies, or investment bank holding companies or the associated

persons of financial institutions, registered broker dealers, insurance companies, bank holding companies, or investment bank holding companies or registered futures commission merchants or registered retail foreign exchange dealers.

Some or all of Defendants' customers were not eligible contract participants. They did not have assets in excess of $10 million. Alternatively, they did not have assets in excess of $5 million and enter into the forex transactions to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred.

The forex transactions conducted by Defendants at Sterling Wentworth and/or LaSalle on behalf of their customers were entered into on a leveraged or margined basis; they were required to provide only a percentage of the value of the foreign currency contracts that they purchased. Further, the forex transactions conducted by Defendants neither resulted in delivery within two days nor created an enforceable obligation to deliver between a seller and a buyer that had the ability to deliver and accept delivery, respectively, in connection with their lines of business. Rather, these forex contracts were offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

## C.     Conclusions of Law

### 1.     Defendants' Transactions Were Futures Contracts

The forex contracts offered and sold by Defendants were futures contracts. Further, some or all of Defendants' customers were not "eligible contract participants" as that term is defined in Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12) (2006) (an "eligible contract participant," as relevant here, is an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual"). In addition,

Defendants have never been proper counterparties authorized under the Act or Regulations to engage in forex futures transactions with retail customers.

### 2. Defendants are Liable for Fraud Pursuant to Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2)

During the relevant period, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of section 5a(g) of the Act, as amended by the CRA, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market, Defendants cheated or defrauded or attempted to cheat or defraud customers or prospective customers, Defendants willfully made or caused to be made to customers false reports or statements or willfully entered or caused to be entered for customers any false record and Defendants willfully deceived or attempted to deceive customers by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract with customers by, among other things knowingly failing to disclose to customers the following: 1) Defendants were going to be, and in fact were the counterparties in each forex transaction entered on behalf of their customers; 2) Defendants owed millions of dollars to customers and they lacked the funds necessary to make these payments as well as any future payments for prospective profits; and 3) Defendants lacked sufficient cash to pay to customers the purported value of their accounts as they appeared on their account statement. Defendants also knowingly overstated the total cash available in customer account statements and made and delivered to customers false account statements. Accordingly, by these actions,

Defendants violated Sections 4b(a)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A), (B) and (C).

### 3. Riolo is Liable as a Controlling Person for Lasalle's and Sterling's Fraudulent Conduct Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b)

Riolo controlled LaSalle and Sterling Wentworth, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, LaSalle's and Sterling Wentworth's conduct alleged in this Count. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006), Riolo is liable for LaSalle's and Sterling Wentworth's violations of Sections 4b(a)(2)(A), (B) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A), (B) and (C).

### 4. Lasalle and Sterling are Liable for Riolo's Fraudulent Conduct Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. Section 2(a)(1)(B) and Commission Regulation 1.2, 17 C.F.R. Section 1.2

The misrepresentations, omissions, and failures of Riolo occurred within the scope of his employment with Sterling and LaSalle; therefore, Sterling and LaSalle are liable for Riolo's violations of Sections 4b(a)(2)(A), (B) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A), (B) and (C), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2009).

### 5. A Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief are Appropriate Remedies

Permanent injunctive relief is warranted in light of the egregious nature of Defendants' knowing fraudulent solicitation and their willful distribution to customers of false account statements. These facts demonstrate a reasonable likelihood of future violations.

Imposition of a civil monetary penalty is appropriate in this case because Defendants' violations of the Act were intentional and directly affected the numerous victims of this fraud. Likewise, the other equitable remedies imposed in this matter are appropriate to ensure that all measures are taken to attempt to compensate the victims of Defendants' wrongful acts.

## II.   ORDER FOR RELIEF

### A.   Permanent Injunction

**IT IS THEREFORE ORDERED THAT**:

1. Defendants are permanently restrained, enjoined and prohibited from directly or indirectly in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of section 5a(g), that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person and false report or statement or willfully to enter or cause to be entered for the other person any false record [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of this paragraph, with the other person in violation of Section 4b(a)(2)(A), (B) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A), (B) and (C).

2. Defendants are further permanently restrained, enjoined and prohibited from engaging directly or indirectly in any activity related to trading in any commodity, as that term is

9

defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4), ("commodity interest"), including but not limited to the following:

- A. From trading of any commodity interest account for themselves or on behalf of any other person or entity;

- B. From soliciting, receiving, or accepting any funds in connection with the purchase and sale of any commodity interest contract;

- C. From applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9) (2009), or acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9) (2009);

- D. From engaging in any business activities related to commodity interest trading.

3. The injunctive provisions of this Order shall be binding upon Defendants, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of Defendants, and upon any person who receives actual notice of this Order, by personal service, email or facsimile, insofar as he or she is acting in active concert or participation with Defendants.

**B.  Civil Monetary Penalty**

**IT IS FURTHER ORDERED** that as of the date of entry of this Order, Defendants shall each pay a civil monetary penalty in the amount of $140,000 plus post-judgment interest (the "CMP Obligation"). Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

Defendants shall pay this CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be

made by other than electronic funds transfer, Defendants shall make the payment payable to the U.S. Commodity Futures Trading Commission and send to the following address:

> Commodity Futures Trading Commission
> Division of Enforcement
> Attention: Marie Bateman – AMZ-300
> DOT/FAA/MMAC
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169
> Telephone: 405-954-6569

If the payment is to be made by electronic funds transfer, Defendants shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany the payment of the CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding.

Defendants shall simultaneously transmit copies of the cover letter and the form of payment to (a) the Director, Division of Enforcement, Commodity Futures Trading Commission, at Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, (b) Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address, and (c) Regional Counsel, U.S. Commodity Futures Trading Commission, Eastern Regional Office, at 140 Broadway, 19th Floor, New York, NY 10005.

## C.    Appointment of Permanent Receiver

**IT IS FURTHER ORDERED** that Michael Goldberg, Esq. is hereby appointed as a permanent equity receiver in this matter. The Receiver is directed and authorized to accomplish the following:

1. Take exclusive custody, control, and possession of all the funds, property, mail and other assets of, in the possession of, or under the control of the Defendants, wherever situated.

2. The Receiver shall have full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including documents related to customers or clients whose interest are now held by or under the direction possession, custody or control of the Defendants;

3. Preserve, hold and manage assets of the Defendants and perform all acts necessary to preserve the value of those assets, in order to prevent any loss, damage or injury to customers or clients;

4. Prevent the withdrawal or misapplication of funds entrusted to the Defendants and otherwise protect the interest of customers or clients;

5. Collect all money owed to the Defendants;

6. Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal, or foreign court necessary to preserve or increase the assets of the receivership or to carry out his or her duties pursuant to this Order;

7. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

8. Issue subpoenas to obtain documents and records pertaining to the receivership;

9. Open one or more bank accounts as designated depositories for funds of the Defendants. The Receiver shall deposit all funds of the Defendants and in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts; and

10. Make payments and disbursements from the receivership assets necessary or advisable for carrying out the directions of or exercising the authority granted by this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Defendants prior to the date of entry of this Order, except from payments that the Receiver deems necessary or advisable to secure assets of the Defendants.

**D.     Compensation of Receiver**

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Defendants' assets. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

**E.     Asset Freeze**

**IT IS FURTHER ORDERED** that Defendants, except as otherwise ordered by this Court, are restrained and enjoined from directly or indirectly:

1.  Transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of any assets, wherever located, including assets held outside the United States, except as otherwise ordered by the Court; or

2.  Opening or causing to be opened any safe deposit boxes titled in the name or subject to access by any of the Defendants.

3.  Notwithstanding the provisions of this paragraph, Defendants shall transfer possession and/or title of all of all assets they own and/or possessor control to the Receiver appointed herein for the purpose of safeguarding such assets and/or placing such frozen assets into designated bank accounts.

**F.     Identification and Preservation of Assets**

**IT IS FURTHER ORDERED,** pending further order of this Court, that any financial or brokerage institution, business entity, or person that holds, controls, or maintains custody of any account or asset titled in the name of, held for the benefit of, or otherwise under the control of

13

the Defendants, or has held, controlled, or maintained custody of any such account or asset of the Defendants at any time shall:

1. Prohibit Defendants and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling or otherwise disposing of any such asset, except as directed by further order of the Court, or as directed by the Receiver;

2. Deny Defendants and all other persons access to any safe deposit box that is: (1) titled in the name of Defendants either individually or jointly with any other party; or (2) otherwise subject to access by Defendants. Notwithstanding this Paragraph, the Receiver shall be provided with access to any safe deposit box titled in the name of, or subject to access by Defendants;

3. Provide the Receiver and counsel for the Commission, within ten (10) business days of receiving a copy of this Order, a statement setting forth:

    (a) the identification number of each such account or asset titled in the name, individually or jointly, of the Defendants or held on behalf of, or for the benefit of the Defendants, or under the control of the Defendants;

    (b) the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, the name of the person or entity to whom such account or other asset was remitted; and

    (c) the identification of any safe deposit box that is either titled in the name, individually or jointly, of Defendants, or is otherwise subject to access by Defendants.

4. Upon request by the Receiver or the Commission, promptly provide the Receiver and the Commission with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, trading records, and safe deposit box logs; and

5. Cooperate with all reasonable requests of the Receiver and/or the Commission relating to implementation of this Order, including transferring assets and/or title to such assets to the Receiver appointed herein and producing records related to Defendants' accounts.

### G. Delivery of Assets to Receiver

**IT IS FURTHER ORDERED** that, immediately upon service of this Order upon Defendants and/or any other person or entity served with a copy of this Order, shall immediately or within such time as permitted by the Receiver in writing, deliver over to the Receiver:

1. Possession, custody and/or title of all assets owned beneficially or otherwise, wherever situated of Defendants; and

2. Information identifying the accounts, employees, properties, or other assets or obligations of Defendants.

### H. Restrain and Enjoin Suits and Proceedings by Third Parties

**IT IS FURTHER ORDERED** that all investors, creditors and other third parties, and all others acting on behalf of any such investors, creditors or other third parties are hereby restrained and enjoined from the following actions, except in this Court, unless this Court, consistent with general equitable principals and in accordance with its ancillary equitable jurisdiction in this matter, orders that such actions may be conducted in another forum or jurisdiction:

1. Commencing, prosecuting, continuing or enforcing any suit or proceeding against the Defendants relating to the subject matter of this civil action, except that actions may be filed to toll any applicable statute of limitations; and

2. Doing any act or thing to interfere with the Receiver taking control, possession or management of the assets subject to the Receivership, or to in any way interfere with the Receiver or the duties of the Receiver; or to interfere with the exclusive jurisdiction of this Court over the assets of Defendants.

This Section does not in any way restrain and/or enjoin the commencement or continuation of an action or proceeding brought by the United States Attorney's Office and/or any other governmental Regulatory Agency relating to the subject matter of this civil action.

### I.     Stay of Pending State Court Proceeding

**IT IS FURTHER ORDERED** that all litigation now pending in the Circuit Court for the 17th Judicial Circuit in Broward County, Florida, in the following matters: 1) *Joseph Willis v. Sterling Wentworth, Lasalle International, Michael Riolo and Lori A. Riolo*, Case No. 09-02541; 2) *Anthony Leonardo and Donald and Nicholas Gory v. Michael Riolo, Lasalle International and Sterling Wentworth,* Case No. 09-01135; and 3) *Gabriel Carino, Patricia Kidder, Carlos Dorta and Charles Payne v. Sterling Wentworth, Lasalle International, Michael Riolo and Lori A. Riolo,* Case No. 09-03824, be stayed for 90 days from the date of this Order.

### J.     Restitution and Disgorgement

**IT IS FURTHER ORDERED** that the Commission's claims for restitution and/or disgorgement arising from the conduct alleged in the Complaint shall remain a part of this action until hereafter resolved by Order of this Court.

### K.     Application of Payments to Monetary Sanctions and Partial Payments

**IT IS FURTHER ORDERED** that all payments by Defendants pursuant to this Order shall first be applied to satisfaction of Defendants restitution and/or disgorgement obligations. After satisfaction of the restitution and/or disgorgement Obligations, payments by Defendants pursuant to this Order shall be applied to satisfy Defendants' CMP Obligation.

**L.      Prohibition on Transfer of Funds**

**IT IS FURTHER ORDERED** that Defendants shall not transfer or cause others to transfer funds or other property to the custody, possession or control of any other person for the purpose of concealing such funds or property from the Court, the Plaintiff, the Receiver, or any officer that may be appointed by the Court.

**M.      Notices**

**IT IS FURTHER ORDERED** that all notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested, as follows:

>   Notice to Commission:     Regional Counsel
>                             U.S. Commodity Futures Trading Commission
>                             Division of Enforcement - Eastern Regional Office
>                             140 Broadway, 19th Floor
>                             New York, New York 10005
>                             Phone: (646) 746-9700
>                             Fax: (646) 746-9740

All such notices to the Commission shall reference the name and docket number of this proceeding.

**N.      Jurisdiction**

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this case to assure compliance with this Order and for all other purposes related to this action.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 16th day of September, 2009.

>                                            _____
>                                            WILLIAM P. DIMITROULEAS
>                                            United States District Judge

Copies furnished to:
Counsel of Record

Lasalle International Clearing Corp.
c/o Michael Riolo
17705 Middlebrook Way
Boca Raton, FL 33496

Sterling Wentworth Currency Group, Inc.
c/o Michael Riolo
17705 Middlebrook Way
Boca Raton, FL 33496

Michael Riolo
17705 Middlebrook Way
Boca Raton, FL 33496

Michael Goldberg, Esq.
Akerman, Senterfitt & Edison
350 East Las Olas Boulevard, Suite 1600
Ft. Lauderdale, FL 33301